UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                                Chapter 11

Rock 51 LLC,                                                    Case No. 25-10034-MEW

                                            Debtor.
-------------------------------------------------------------x

## NOTICE OF APPEAL

      Notice is hereby given that the Debtor, Rock 51 LLC, hereby appeals to the United States District Court for the Southern District of New York from the Order dated March 31, 2025 [ECF No. 45], a copy of which is annexed hereto as Exhibit "A," together with the underlying Decision of even date issued in connection therewith [ECF No. 44], a copy of which is annexed hereto as Exhibit "B".

                Parties to the Appeal:

                Appellant:    Rock 51 LLC

                Attorneys for Appellants:
                          Goldberg Weprin Finkel Goldstein LLP
                          Kevin J. Nash, Esq.
                          125 Park Avenue, 12th Floor
                          New York, New York 10017
                          (212) 221-5700
                          knash@gwfglaw.com

    Appellee:    Pref 7 West 51st Street LLC

    Attorneys for Appellee:
        Rosenberg & Estis, P.C.
        733 Third Avenue, 15th Floor
        New York, New York 10017
        (212) 867-6000
        Andrew R. Gottesman, Esq.
        agottesman@rosenbergestis.com
        Brendan J. Derr, Esq.
        bderr@rosenbergestis.com

Dated: New York, New York
      April 4, 2025

        Goldberg Weprin Finkel Goldstein LLP
        Attorneys for Debtor/Appellant
        125 Park Avenue, 12th Floor
        New York, New York 10017
        (212) 221-5700

        By:   /s/ *Kevin J. Nash, Esq.*

**Exhibit "A"**

Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

                                                    Chapter 11

ROCK 51 LLC,

                                                    Case No.: 25-10034 (MEW)

                         Debtor.
-----------------------------------------------------------x

## ORDER ESTABLISHING THE LEASE BETWEEN THE
## DEBTOR AND THE LANDLORD TERMINATED AS OF AUGUST 9, 2024

       This matter came before the Court upon a motion to determine whether the lease between Debtor and Pref 7 West 51st Street LLC (the "**Landlord**") was terminated prior to the petition date and for the grant of related relief. A hearing was held on March 14, 2025, during which the Court heard the Debtor and the Landlord. The Court having fully considered the matter, and for the reasons stated in the Decision with respect to the motion, filed this same day,

       **IT IS HEREBY ORDERED:**

       1.     The Lease between the Debtor and the Landlord terminated as of August 9, 2024.

       2.     Pursuant to section 362(b)(10) of the Bankruptcy Code, the automatic stay does not bar the continuation of the Landlord's state court action to recover possession of the premises formerly leased to the Debtor pursuant to the Lease. However, the automatic stay does apply to any effort by the Landlord to obtain other relief (including monetary relief) from the Debtor in any Court other than this Court. Accordingly, the Landlord may continue its pending action in the Civil Court to recover possession, but not for the purpose of obtaining any other relief.

Dated: New York, New York
          March 31, 2025

                                                                **s/Michael E. Wiles**
                                                                Hon. Michael E. Wiles
                                                                United States Bankruptcy Judge

**Exhibit "B"**

Decision

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re: :
 :  Chapter 11
ROCK 51, LLC, :
 :  Case No. 25-10034 (MEW)
      **Debtor** :
------------------------------------------------------------x

**DECISION DETERMINING WHETHER THE LEASE BETWEEN THE DEBTOR**
**AND THE LANDLORD WAS TERMINATED AS OF AUGUST 9, 2024**

A P P E A R A N C E S:

GOLDBERG WEPRIN FINKLE GOLDSTEIN LLP
New York, NY
*Attorneys for Debtor Rock 51, LLC*
  By: Kevin J. Nash, Esq.

ROSENBERG & ESTIS, P.C.
New York, NY
*Attorneys for Pref 7 West 51st Street LLC*
  By: Andrew R. Gottesman, Esq.
      Brendan J. Durr, Esq.

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

      Rock 51, LLC, ("**Rock 51**") and Pref 7 West 51st Street, LLC (the "**Landlord**") entered into a lease agreement dated February 1, 2022 (the "**Lease**") for non-residential real property located at 7 West 51st Street, New York, NY. On July 12, 2024, the Landlord sent a notice of default (the "**Default Notice**") that included a demand for payment of $389,984.37 of asserted rent arrears by July 29, 2024. On July 26, 2024, Rock 51 made a partial payment of $83,333, leaving a balance of $306,651.37. Rock 51 does not dispute that rent payments were in arrears and does not dispute that it failed to make the full payment that was needed to cure the arrears.

      On July 30, 2024, the Landlord sent a notice of termination (the "**Termination Notice**"), informing Rock 51 of the Landlord's election to terminate the Lease and the tenancy as of

1

August 9, 2024. Rock 51 did not surrender the premises, and the Landlord commenced a holdover proceeding on September 4, 2024. A trial was scheduled for January 13, 2025, but was stayed by Rock 51's bankruptcy filing on January 12, 2025.

The Landlord has asked for relief from the automatic stay and for other relief. The Landlord's primary contention is that the Lease was validly terminated as of August 9, 2024, and that Rock 51 has no rights to the Lease or to the premises that could be resurrected or enforced in this bankruptcy case. Rock 51 contends that the Lease was not validly terminated and that it wishes and intends to cure the prior defaults and to assume the Lease pursuant to section 365 of the Bankruptcy Code. The parties agreed that the relevant issues did not require evidentiary submissions and could be decided as questions of law.

**1.      Whether the Notices Were Proper in Form and Content**

Rock 51 contends that the notices were not addressed in the manner required by the Lease and that the Notice of Default did not contain sufficient warnings that a failure to cure the defaults could result in the termination of the Lease. As a result, in its view, the termination of the Lease never took effect.

**A.      The Addresses Used in the Notices**

Section 24.1 of the Lease states that any notice sent pursuant to the Lease must be given by the Landlord, addressed to Rock 51 at the Premises and, until Rock 51 has moved to the Premises, addressed to Rock 51 at its address as stated on the first page of the Lease. *See* Lease, § 24.1. Section 1.1 of the Lease states that the term "Premises" has "the meaning set forth in Section 1.2." Section 1.2 states:

> Landlord hereby leases to Tenant, and Tenant hereby hires from Landlord those portions of the ground floor, mezzanine, second floor and lower levels indicated in pink shading on the floor plans annexed hereto as <u>Exhibit A</u> and made a part hereof in the building known as 7 West 51st Street, New York, New York (herein called the "Building") in the Borough of Manhattan, City,

2

County and State of New York (herein called the "Premises" or the "Demised Premises").

The Notice of Default and the Notice of Termination each state that they are addressed "to" Rock 51 as follows:

> Rock 51, LLC
> 7 West 51st Street, Ground Floor
> New York, New York 10019

The foregoing description of Rock 51's address was immediately followed, in each notice, by the following language:

> Re: PREMISES: Those portions of the ground floor, mezzanine, second floor and lower levels indicated in pink shading on the floor plans annexed hereto as **Exhibit A**, in the building known as 7 West 51st Street, New York, New York (the "Building") in the Borough of Manhattan, City, County and State of New York (the "Premises").

The description of the Premises that is set forth in each notice is identical to the language that appears in the Lease. The notices also attached the relevant color-coded floor plans showing the location of the spaces that were subject to the Lease. Rock 51 does not contend that it suffered from any confusion as to the "Premises" that were the subject of the Notices.

The Landlord has also submitted proofs of service showing that copies of the foregoing notices were delivered to three addresses. First, they were delivered to Rock 51 at the Fifth Avenue address listed in the first page of the Lease that was to be used prior to the date when Rock 51 moved to the premises. Second, the notices were sent to the address for the contact designated to receive service of process from the New York Secretary of State. Finally (and more pertinent to the matter before the Court) the notices were sent to Rock 51 at the "Ground Floor – Retail Space" at 7 West 51st Street. That language differs slightly from the notices themselves, which listed Rock 51's address as "7 West 51st Street, Ground Floor."

Rock 51 does not contend that it failed to receive the notices. It also does not challenge the delivery methods that were used. It contends, however, that that it had "moved" to the

3

Premises and therefore that the delivery to the Fifth Avenue address listed in the first page of the Lease was not sufficient. It also contends that the Lease required that the notices be sent to Rock 51 "at the Premises," and that references to the "Ground Floor" in the address box of the notices themselves, and references to the "Ground Floor – Retail Space" on the envelopes in which the notices were enclosed, was insufficient. Obviously, the full legal description of the Premises (which includes a reference to separate color-coded floor plans) could not have appeared in the address block on the outside of an envelope. Rock 51 contends, however, that notices and the envelopes should have been addressed to Rock 51 at the "ground floor, mezzanine, second floor, and lower level retail space" and not just to the "Ground Floor" or to the "Ground Floor - Retail Space," and that in the absence of the more complete language the notices were invalid.

  Rock 51's argument is without merit. The Lease does not specify precisely how the Notices were to be addressed. Nor did it specify how the Premises were to be described in the address blocks for the notices. The Lease merely requires the delivery of notices to Rock 51 "at" the Premises. The Ground Floor and the Retail Space plainly were part of the Premises. Accordingly, the Notices were addressed to, and delivered to, Rock 51 "at" the Premises. The full legal description of the Premises also appears immediately below the address block on the notices themselves, making clear that the entire Premises were the subject of the notices.

  In support of its contrary argument, Debtor cites the decision in *George Doulaveris & Son, Inc. v. P.J. 37 Food Corp.*, 39 Misc.3d 1, 961 N.Y.S.2d 722 (App. Term 2013). However, that decision is distinguishable. The issue before the court in *Doulaveris* did not involve an allegedly incomplete description of the physical address occupied by the tenant, as is the case here. Instead, the relevant notice in *Doulaveris* was addressed to an entity that was not named in the lease, and the landlord failed to provide evidence that the tenant and the named recipient

4

were the same entity. The court deemed the notice defective because the notice was not sent to the "tenant" as required by law. 961 N.Y.S.2d at 724. It is beyond question in this case that the notices named the correct tenant, that they were addressed to the tenant, and that they were received by the tenant "at" the Premises. Nothing more was required.

B.     **The Wording of the Notice of Default**

Article 20 of the Lease is entitled "Defaults and Remedies; Waiver of Redemption." Article 20.1(A) states that a failure to pay any installment of Fixed Rent or any installment of additional rent when due constitutes an "Event of Default" if such failure continues for ten (10) Business Days after the date that Landlord gives notice of such failure. If an Event of Default occurs for this reason, then Article 20.2(A) of the Lease permits the Landlord to terminate the Lease. Section 20.2(A) states:

> [i]f (i) an Event of Default occurs, and (ii) Landlord, at any time thereafter, at Landlord's option, gives a notice to Rock 51 stating that this Lease and the term thereof shall expire and terminate (a "Termination Notice") on the fifth (5th) Business Day after the date that Landlord gives Rock 51 such Termination Notice, then this Lease and the term thereof and all rights of Rock 51 under this Lease shall expire and terminate as of the fifth (5th) Business Day after the date that Landlord gives Rock 51 such Termination Notice.

On July 12, 2024, the Landlord sent the Default Notice. The Default Notice asserted that the amount past due totaled $389,984.37, and it itemized those amounts with references to the relevant Lease provisions. The Default Notice specified a cure date of July 29, 2024, and said that if Rock 51 were to fail to cure the defaults by the deadline, then "Landlord may exercise its rights and remedies under the Lease and/or applicable law." The Default Notice then stated expressly that it was being sent pursuant to "Articles 20 and 24 of the Lease."

On July 30, 2024, the Landlord sent the Termination Notice. The Termination Notice discusses the Default Notice and states that based upon Rock 51's failure to cure the $306,651.37

5

default by the cure date set forth in the Default Notice, and pursuant to Section 20.2(A) of the Lease, the Landlord hereby elects to terminate the Lease and Rock 51's tenancy at the Premises as of August 9, 2024. *See* Termination Notice.

There is not, and could not be, any reasonable dispute that the Termination Notice stated unequivocally that the Lease had been terminated and that the termination would occur on August 9, 2024. Rock 51 contends, however, that the prior Default Notice needed to include a more explicit warning that termination might occur if the default were not cured. In Rock 51's view, the entire termination was invalid because the Default Notice was not sufficiently explicit about that termination risk. Rock 51's contention is wrong, both in terms of what the Lease requires and in terms of what the law requires.

There is nothing in the Lease that calls for the extra "warning" that Rock 51 says was required. The Lease contemplated two separate notices: a notice of default, and then a possible notice of termination if a default were to mature into an Event of Default. There is nothing in the Lease that required the Landlord to repeat the provisions of the Lease in a default notice or otherwise to spell out, for the tenant, the specific remedies that the Landlord might elect to pursue if the defaults are not cured.

Nor does the law require the additional "warnings" that Rock 51 contends were needed. Rock 51 relies on decisions in which a tenant merely received a single notice of default and never received an unequivocal notice of termination. *See Filmtrucks, Inc. v. Express Indus. & Terminal Corp.*, 127 A.D.2d 509, 510-511 (1st Dep't 1987) (notice of default failed to reference the default provision of the lease, did not provide a cure date, included unclear language, and was not signed by the landlord, but by its attorney who was a non-party to the lease); *City of Buffalo Urban Renewal Agency v. Lane Bryant Queens*, 90 A.D.2d 976, 977 (4th Dept. 1982)

6

(sole notice that was provided was equivocal in that it did not threaten termination and at the same time told the tenant, in conspicuous language, that "You do not need to move now.") That is not what happened here. The Termination Notice gave Rock 51 the "unequivocal" statement of termination that Rock 51 says the law required. There is nothing in the applicable law, or in the decisions cited by Rock 51, that requires that such language be included in *both* the Notice of Default and the Termination Notice.

During oral argument, Rock 51's counsel acknowledged that the Landlord had no obligation, in the Default Notice, to commit itself to a termination of the Lease in the event that the existing payment defaults were not cured. Counsel also agreed that the law did not require the Landlord to quote from the full termination provisions of the Lease. Counsel argued, however, that the Default Notice should have referred specifically to "Article 20.2(a)" of the Lease (the precise subparagraph where the termination provision is found) instead of just referring generally to "Article 20" of the Lease. This contention is rebutted by the very decision upon which Rock 51 primarily relies.

In *NL Indus., Inc. v. PaineWebber Inc.*, 720 F. Supp. 293 (S.D.N.Y. 1989), the court considered the effect of a notice that stated as follows: "[Tenant] is hereby given notice, pursuant to the terms of § 16 of the [lease] . . . of the . . . defaults of [Tenant] under the [lease]." 720 F. Supp. at 300. Section 16 of the lease in that case, entitled "Default," had various subsections. Some of those subsections outlined the process to cure defaults, and other subsections allowed a termination in the event of a failure to cure. *Id*. at 300-01. The notice did not reference the specific subsections of § 16 in which the termination provisions were found. However, the court deemed that the reference to §16 as a whole was sufficient to warn the tenant that a termination was possible if the tenant's defaults were not cured. *Id*. The court held that "there is no authority

7

for the proposition that in a commercial context, [a] notice must cite the lease termination provision . . . explain [a landlord's] rights in the event of a failure to cure, and explain that [a landlord] intends to terminate in the event that the defaults are not cured." *Id.* at 300.

Similarly, in *One Main, LLC v. Le K Rest. Corp.*, 1 A.D.3d 365, 766 N.Y.S.2d 878 (2003), a landlord sent a notice to cure that referred to the article of a lease in which all of the default and termination provisions were to be found, and informed the tenant that the landlord "shall be entitled to resort to the full battery of rights and remedies available under the Lease" if the default were not cured. *Id*. at 879. The court deemed that language to be sufficient.

Neither *NL Indus., Inc* or *One Main, LLC*, support Rock 51's argument that the Notice of Default was deficient, and ineffective, merely because it referred to Article 20 of the Lease as a whole instead of referring more specifically to Article 20.2(a) of the Lease. Rock 51 is a sophisticated commercial tenant. It (and its attorneys) ought to be charged with knowledge of the default and termination provisions in the Lease that Rock 51 negotiated and signed, and Rock 51 had to have been aware of the potential consequences of a failure to cure its payment defaults.

It is true (as Rock 51 argues) that the law abhors a forfeiture. However, landlords also have legal rights, and the law also abhors (or should abhor) hyper-technical arguments that are only designed to frustrate parties' legitimate rights rather than to protect them. The Default Notice said that the Landlord reserved its rights and remedies under applicable law and under the Lease, and it referred explicitly to Section 20 of the Lease, which is the section where the termination right is found. No more was required.

II.     Whether the Termination Provisions Amount to a Termination Based on a
        "Conditional Limitation" or a "Condition Subsequent"

New York State law distinguishes between a "conditional limitation" and a "condition subsequent." The parties agreed that if the termination here were properly interpreted to

8

represent a termination based on a "conditional subsequent" then the termination of Rock 51's tenancy would not have been complete until the entry of an order in a subsequent holdover proceeding. On the other hand, if the termination were properly interpreted as representing a termination based on a "conditional limitation," then the termination was effective on August 9, 2014. In that event, a further court proceeding might have been required if Rock 51 refused to vacate the premises, but no further court order would have been required to bring about the termination itself.

A termination occurs as the result of a conditional limitation if that termination automatically happens upon the occurrence of an event and without further action by any party. *In re Portofindough LLC*, 655 B.R. 694, 699 (Bankr. S.D.N.Y. 2023). A termination is based on a condition subsequent if the party seeking to terminate must take an additional affirmative act in order to effectuate the termination. *Id*.; s*ee In re Velo Holdings Inc.*, 475 B.R. 367, 382 (Bankr. S.D.N.Y. 2012).

Here, Rock 51 focuses on whether the Default Notice, by itself, would have been sufficient to terminate the Lease. The Lease itself makes clear that the Default Notice, by itself, could not have done so. The purpose of the Default Notice was to inform the Rock 51 of the default and to specify the time within which that default would mature into an "Event of Default." Once an Event of Default occurred, however, and once a Termination Notice was sent, the termination of the Lease on the Termination Date required no further events and no further action by any person. Instead, the termination was automatic when the Termination Date occurred. Under those circumstances the termination occurred pursuant to a "conditional limitation" and was valid and effective on August 9, 2024. *See In re Pol'y Realty Corp.*, 242 B.R. 121, 128 (S.D.N.Y. 1999), *aff'd,* 213 F.3d 626 (2d Cir. 2000) (lease automatically terminates

9

after the date specified in the termination notice); *In re Portofindough LLC*, 655 B.R. 694, 700 (Bankr. S.D.N.Y. 2023) (lease provision was deemed a conditional limitation which allowed a landlord to send a notice of default, and after a failure to cure, to send a notice of termination which automatically terminated the lease after a specified time period); *TSS-Seedman's, Inc. v. Elota Realty Co.*, 531 N.E.2d 646, 647 (1988) (termination clause was a conditional limitation which stated that if a notice of default were sent, the lease would automatically terminate as of the effective date listed on the termination notice).

The fact that the Rock 51 remained contractually liable, following the termination of the Lease, is a common leasehold term that has nothing to do with whether the leasehold itself has been terminated.

## Conclusion

For the foregoing reasons, the Default Notice and Termination Notice were properly worded and were properly delivered to Rock 51 "at" the relevant premises, and the termination of the Lease occurred as of August 9, 2024, a number of months before the filing of this bankruptcy case. Rock 51 therefore has no further rights to the premises and no right or ability to assume the Lease, and the Landlord is entitled to pursue the removal of Rock 51 from the premises. A separate Order has been issued to reflect the Court's rulings.

Dated: New York, New York
       March 31, 2025

                                            **s/Michael E. Wiles**
                                            Honorable Michael E. Wiles
                                            United States Bankruptcy Judge