UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROCK 51 LLC,<br><br>         Appellant,<br><br>    -against-<br><br>PREF 7 WEST 51ST STREET LLC,<br><br>         Appellee. | 25-cv-3027 (AS)<br><br><u>OPINION AND ORDER</u> |

ARUN SUBRAMANIAN, United States District Judge:

Appellant Rock 51 LLC was a tenant in 7 West 51st Street. Rock 51 was behind on its rent (by nearly $400,000), and the landlord, appellee Pref 7 West 51st Street LLC, sent Rock 51 LLC a notice of default. After the period to cure the default had lapsed without payment, Pref 7 terminated Rock 51's lease. Rock 51 later went into bankruptcy and challenged Pref 7's pre-petition termination of the lease, making three arguments—(1) that the notice had not been sent to the proper address pursuant to the terms of the lease, (2) that the default notice didn't specifically advise Rock 51 that the lease might be terminated, and (3) that the termination provision created a "condition subsequent" such that the termination was not actually effected prior to Rock 51's bankruptcy filing. The Bankruptcy Court ruled in favor of Pref 7, and Rock 51 appealed.

After the appeal was filed, Rock 51 moved to stay its eviction from 7 West 51st Street pending conclusion of this appeal, which the Court denied after a hearing, finding that Rock 51 had failed to show a likelihood of success on the merits. Dkt. 17. Rock 51 did not seek any further interim relief from this Court or the Second Circuit. For the reasons set forth below, the Court AFFIRMS the decision and order of the Bankruptcy Court.

## BACKGROUND

### I. The Bankruptcy Court's Order

The Bankruptcy Court first addressed whether the default notice was addressed in the manner required by the lease. Opinion on Lease Termination, *In re Rock 51, LLC*, No. 25-10034 (MEW) (Bankr. S.D.N.Y. March 31, 2025), Dkt. 44 ("Bankruptcy Court Opinion"), at 2. As noted by the Bankruptcy Court, the lease required that Pref 7 send all notices to Rock 51 at the "Premises," which were defined as

> those portions of the ground floor, mezzanine, second floor and lower levels indicated in pink shading on the floor plans annexed hereto as Exhibit A and made a part hereof in the building known as 7 West 51st Street, New York, New York (herein called the 'Building') in the Borough of Manhattan, City, County and State of New York (herein called the 'Premises' or the 'Demised Premises').

*Id.* at 2–3.

The default notice (as well as the subsequent notice of termination) was addressed to Rock 51 at "7 West 51st Street, Ground Floor" and included a description of the Premises matching the definition above. It was served to three different addresses, including the "Ground Floor - Retail Space" at 7 West 51st Street. The Bankruptcy Court noted that "Rock 51 does not contend that it failed to receive the notices." *Id*. at 3.

Instead, Rock 51's argument was that notices and the envelopes should have been addressed to Rock 51 at the "ground floor, mezzanine, second floor, and lower level retail space" and not just to the "Ground Floor" or to the "Ground Floor - Retail Space," and that in the absence of the more complete language, the notices were invalid. The Bankruptcy Court rejected that argument, noting that "[t]he Lease does not specify precisely how the Notices were to be addressed. Nor did it specify how the Premises were to be described in the address blocks for the notices. The Lease merely requires the delivery of notices to Rock 51 'at' the Premises. The Ground Floor and the Retail Space plainly were part of the Premises. Accordingly, the Notices were addressed to, and delivered to, Rock 51 'at' the Premises. The full legal description of the Premises also appears immediately below the address block on the notices themselves, making clear that the entire Premises were the subject of the notice." *Id*. at 4. The Court distinguished cases where the notice was not actually sent to the tenant as required by law, noting that "[i]t is beyond question in this case that the notices named the correct tenant, that they were addressed to the tenant, and that they were received by the tenant 'at' the Premises. Nothing more was required." *Id*. at 5 (distinguishing *George Doulaveris & Son, Inc. v. P.J. 37 Food Corp.*, 39 Misc. 3d 1, 961 N.Y.S.2d 722 (App. Term 2013)).

Moving to the issue of the default notice's wording, the Bankruptcy Court noted that Article 20.1(A) of the lease stated that the failure to pay rent constituted an Event of Default, and that the next subsection of the lease, Article 20.2(A), provided that if this Event of Default occurs and is not cured, then the landlord may terminate the lease. As noted by the Bankruptcy Court, the "Default Notice specified a cure date of July 29, 2024, and said that if Rock 51 were to fail to cure the defaults by the deadline, then 'Landlord may exercise its rights and remedies under the Lease and/or applicable law.' The Default Notice then stated expressly that it was being sent pursuant to 'Articles 20 and 24 of the Lease.'" *Id*. at 5. Addressing Rock 51's argument that the "Default Notice needed to include a more explicit warning that termination might occur if the default were not cured," the Bankruptcy Court observed that no further warning was needed here. *Id.* at 6. Rejecting Rock 51's argument that the default notice had to specifically refer to "Article 20.2(A)" of the lease, instead of to "Article 20.1(A)" or "Article 20" more generally, the Court observed that this was inconsistent with the primary case that Rock 51 itself relied on, *NL Indus. Inc. v. PaineWebber Inc.*, 720 F. Supp. 293 (S.D.N.Y. 1989). In that case, as the Bankruptcy Court observed, the notice of default referred generally to the default provision of the lease, but didn't refer specifically to the termination subdivision of that provision. The Court observed that "there is no authority for the proposition that in a commercial context, [a] notice must cite the lease termination provision . . . explain [a landlord's] rights in the event of a failure to cure, and explain

2

that [a landlord] intends to terminate in the event that the defaults are not cured." *Id.* at 300. The Bankruptcy Court similarly noted that a default notice was deemed sufficient in *One Main, LLC v. Le K Rest. Corp.,* 1 A.D.3d 365 (2003), in which "a landlord sent a notice to cure that referred to the article of a lease in which all of the default and termination provisions were to be found, and informed the tenant that the landlord 'shall be entitled to resort to the full battery of rights and remedies available under the Lease' if the default were not cured." *Id.* at 879. The Court deemed that language to be "sufficient." Bankruptcy Court Opinion at 8.

On the last issue of whether the termination of the lease was based on a so-called "conditional limitation" or "condition subsequent," the Bankruptcy Court observed that if Pref 7's termination was properly interpreted to be based on a "condition subsequent," it wouldn't be finalized until the entry of an order in a subsequent holdover proceeding. If it were instead a termination based on a "conditional limitation," then the termination was effective as of August 9, 2024, the effective date set forth in the termination notice. Bankruptcy Court Opinion at 9. The question turned on whether the termination automatically occurred without further action by either party, or rather if the party seeking to terminate must take an additional affirmative act to effectuate the termination. *Id*. The Court concluded that in this case, "[o]nce an Event of Default occurred, however, and once a Termination Notice was sent, the termination of the Lease on the Termination Date required no further events and no further action by any person. Instead, the termination was automatic when the Termination Date occurred. Under those circumstances the termination occurred pursuant to a 'conditional limitation' and was valid and effective on August 9, 2024." *Id*. The Court observed that the mere fact that Rock 51 remained liable to Pref 7 for its outstanding contract obligations "has nothing to do with whether the leasehold itself has been terminated." *Id*.

For these reasons, the Bankruptcy Court concluded that Rock 51's lease had properly been terminated months before its bankruptcy petition had been filed, and that Rock 51 therefore had no further rights to the lease.

## II.    This Court's Stay Order

After this appeal was filed, this Court denied Rock 51's motion to stay its eviction from the building pending this appeal. Dkt. 17. On that motion, Rock 51 focused on its argument that the default notice was defective for failing to advise Rock 51 about the possibility of termination. The Court reviewed the parties' arguments, the terms of the lease, and the default notice, as well as the *NL Industries* and *One Main* cases that Rock 51 principally relied on. The Court observed that "[h]ere, the default notice complied with the lease's terms; cited generally to Section 20, which includes the termination provision; cited specifically to the subsection of Section 20 making clear an unremedied default would lead to an Event of Default, the consequences of which—potential termination—are spelled out in the very next subsection; and advised Rock 51 that Pref 7 'may exercise its rights and remedies under the Lease.' That plainly sufficed under *NL Industries* and *One Main* to put Rock 51 on notice." *Id*. at 3.

3

## STANDARD OF REVIEW

"Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo. Fed. R. Bankr. P. 8013." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482–83 (2d Cir. 2012).

## DISCUSSION

On appeal, Rock 51 jettisons its argument that the default notice wasn't properly addressed pursuant to the terms of the lease. In a footnote, however, Rock 51 seems to suggest that "there is a genuine issue of fact as to whether the [default notice] was ever received in the first place." Dkt. 7 at 4 n.2. This argument is waived for being insufficiently presented to this Court. *See United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993). Even if it were not waived, Rock 51 does not actually deny receiving the notice, and so this argument would not be the basis for relief anyway. And finally, Rock 51 doesn't cite any factual basis for its argument that the notice may not have been received, which is inconsistent with the entirety of the record, and how both this Court and the Bankruptcy Court understood Rock 51's argument. That is, Rock 51 didn't challenge getting the default notice, but simply argued that the notice was defective for having been addressed or delivered in a manner inconsistent with the lease. Rock 51 cites to *DLB of NY, LLC v. Billan*, 70 Misc. 3d 143(A), 2021 WL 784965 (2d Dep't 2021), but that case is totally different, and involved a situation where a tenant was evicted from a *different property* than that set forth in the lease, notice, and other pleadings. *Id*. at *2.

Rock 51's primary argument on appeal is that the default notice did not sufficiently warn Rock 51 that termination would result from failure to cure the default. Rock 51 argues that New York law requires a "strict construction" approach to interpreting default notices, and here, that required a "'tie-in' or nexus stating in some overt manner that the failure to cure under the [default notice] will work a forfeiture of the lease." Dkt. 7 at 12 (citing *NL Industries*). But even if a "strict construction" approach applies in the context of sophisticated commercial parties like these, it was satisfied for the reasons set forth by the Bankruptcy Court and this Court in its stay order.

Rock 51's argument seems to be based on a misunderstanding of what "strict construction" means. To be sure, to effect a forfeiture, Pref 7 was required to strictly comply with the requirements of the lease in noticing Rock 51's default, advising it of the potential consequences, and then noticing a termination of the lease. Pref 7 did all of that. To the extent that Rock 51 suggests that New York law imposes a free-standing requirement that a default notice must do more, and must specifically cite to the termination provision of the lease and say that the lease will be terminated if the default is not cured, there is no basis for that in the law.

The Court has reviewed the cases cited by Rock 51 in its appeal, and they don't suggest that further detail was required, especially in the commercial lending context. In addition to *NL Industries* and *One Main,* which both this Court and the Bankruptcy Court addressed, in *Filmtrucks, Inc. v. Express Indus. & Term. Corp.*, 127 A.D.2d 509 (1st Dep't 1987), the letter at issue didn't refer to *any* provision of the lease and simply told the lessee that if it didn't do what

was stated in the letter, "we would appreciate your immediately vacating the space and not require any action on our part." *Id.* at 511. Indeed, the letter didn't even advise the lessee that it had the right to cure the alleged defaults. That obviously deficient notice is far afield from this case. The same plain distinctions are apparent in all the cases Rock 51 relies on. They all involved fatal defects in the notices that aren't presented here. *See, e.g.*, *240 West 37th LLC v. BOA Fashion, Inc.*, 899 N.Y.S.2d 63, 2009 WL 2603146, at *1 (1st Dep't 2009) (notice to cure was "fatally deficient" because it "conspicuously failed to inform tenant of the precise defaults alleged"); *542 Holding Corp. v. Prince Fashions, Inc.*, 46 A.D.3d 309, 311 (1st Dep't 2007) (notice deficient where it failed to provide notice of "the alleged amount due and of the period for which such claim is made"); *200 West 58th Street LLC v. Little Egypt Corp.*, 801 N.Y.S.2d 243, 2005 WL 1021612, at *2 (N.Y.C. Civ. Ct. 2005) (notice deficient where "by its very inclusion of unspecific and equivocal grounds for termination, in one instance without reference to any lease violation, and equally ill-defined methods of curing such 'violations,' [it] fails in the notice's fundamental purpose"); *57 E. 54 Realty Corp. v. Gay Nineties Realty Corp.*, 335 N.Y.S.2d 872, 874 (1st Dep't 1972) (nature of issue not specified, but breach deemed not so material as to warrant termination, and landlord acted in bad faith by choosing "surreptitiously to reacquire the space by failing to alert the tenant as to the consequences of its acts"). So even if the general principles set forth in Rock 51's brief are accepted, the Court rejects Rock 51's efforts to bootstrap them into a "gotcha" argument that has no basis in the law.

Rock 51 also faults the Bankruptcy Court for relying on the termination notice, which came *after* the default notice, in justifying its decision. While the Bankruptcy Court did refer to the termination notice in its decision, it specifically addressed why the default notice on its own terms complied with the law's requirements as a predicate to termination, explaining why it was consistent with the lease (which Rock 51 doesn't challenge), and fit within the rubric of *NL Industries* and *One Main*, Rock 51's primary authorities. As previously explained by this Court, it agrees with the Bankruptcy Court's application of those cases. For these reasons, the Court rejects Rock 51's argument that the default notice was deficient and could not serve as the predicate for termination of the lease.

Finally, the Court rejects Rock 51's argument that the termination of the lease was not based on a conditional limitation (one that would treat the termination as effective on the date set forth in the termination notice) and instead that it was based on some condition subsequent. Indeed, Rock 51 doesn't argue that the explicit terms of the lease premise termination on some condition subsequent. It instead argues that this lease is ambiguous on that score, and for that reason, given Rock 51's "strict construction" approach to landlord-tenant relations, all ties go to the tenant. But there's no tie here. Any plausible reading of the lease shows that "this Lease and the term thereof shall expire and terminate . . . on the fifth (5th) Business Day after the date that Landlord gives Tenant such Termination Notice." Lease Agreement, *In re Rock 51, LLC*, No. 25-10034 (MEW) (Bankr. S.D.N.Y. Feb. 25, 2025), Dkt. 25-1, Section 20.2(A), at 65. While the provision continues to clarify that "Tenant shall nonetheless remain liable for all of its obligations hereunder [i.e., under the lease agreement] as hereinafter provided," *id.*, and subsequently provides that after termination,

Pref 7 may do such things as reenter the premises after termination, *id*. Section 20.3(A)(1), at 66, those collateral rights and obligations have nothing to do with the termination of the lease and Rock 51's rights, which plainly terminate on the fifth day after the termination notice is sent. There's no ambiguity here; the Bankruptcy Court correctly concluded that the termination was effective without any condition subsequent. *See In re Policy Realty Corp.*, 242 B.R. 121, 128 (S.D.N.Y. 1999), *aff'd*, 213 F.3d 626 (2d Cir. 2000) ("A lease may be terminated under New York law by operation of a conditional limitation. In this manner, the landlord sends the tenant in default a notice of termination of the lease, stating that the lease will be deemed terminated upon a specified date due to tenant's default. *The lease is terminated when the time expires, rather than on any further act by the landlord.*" (internal citation omitted; emphasis added)).

## CONCLUSION

For the foregoing reasons, the decision and order of the Bankruptcy Court are AFFIRMED. The Clerk of Court is directed to enter judgment in appellee's favor and close this case.


SO ORDERED.

Dated: December 31, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge